Richard G. Grant
Tex. Bar No. 08302650
CM LAW, LLP
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR
DEBTORS IN POSSESSION

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ER OF TEXAS, LLC, ET AL.,[1] | § | Case No. 24-40606-11 |
| | § | Chapter 11 |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

**DEBTORS' MOTION FOR INJUNCTIVE RELIEF UNDER 11 U.S.C. §
105(A) TO ENJOIN CREDITORS FROM PURSUING CLAIMS AGAINST
THE DEBTORS' INDEMNIFIED PARTIES**

**TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:**

ER of Texas, LLC and its affiliated debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned Chapter 11 cases, by "and through their undersigned counsel,

hereby file this *Debtors' Motion for Injunctive Relief Under 11 U.S.C. § 105(a) to Enjoin*

*Creditors from Pursuing Claims Against the Debtors' Indemnified Parties* ("Motion") and

respectfully submit as follows:

---

[1] The debtors and debtors in possession are ER of Texas, LLC (EIN: 85-1751319); ER of Texas Colleyville, LLC (EIN: 87-1585575); ER of Texas Frisco, LLC (EIN: 85-1820777); ER of Texas Highland Village, LLC (EIN: 85-1794491); ER of Texas Hillcrest LLC (EIN: 87-1552062); ER of Texas Hurst, LLC (EIN: 87-1558323); ER of Texas Little Elm, LLC (EIN: 85-1778208); ER of Texas Texoma, LLC (EIN: 87-1558137); ER of Texas Uptown, LLC (EIN: 87-1651640); MedOPs Staffing, LLC (EIN: 83-4637945); and PERT, PLLC (EIN: 85-3330746).  The mailing address of the debtors is 2800 Little Elm Parkway, Little Elm, Texas 75068.

# I. PRELIMINARY STATEMENT

1.      The Debtors file this Motion seeking entry of an order under 11 U.S.C. § 105(a) temporarily enjoining all creditors from commencing or continuing any lawsuits, collection actions, or other proceedings against the Debtors' indemnified parties (the "Indemnified Parties") on account of guarantees or similar obligations related to the Debtors' pre-petition debts for a period of 60 days from entry of the order granting this Motion, subject to further extension by order of the Court upon motion by the Debtors. The Indemnified Parties include (collectively, the "Indemnified Parties" or "Guarantors"):

   a)      Ronnie Frank Walraven, Jr. ("Ron Walraven"), Manager and one-third equity owner Member of ER of Texas, LLC and guarantor;

   b)      Phillip Michael Hawk, Jr., one-third equity owner/Member/guarantor, prior Manager;

   c)      Michele Brownfield, one-third equity owner/Member/guarantor and Chief Operating Officer (personnel);

   d)      Brad Woy, Member, guarantor; and

   e)      Eric Mattingly, Member, guarantor.

2.      As set forth in detail below, the continuation or commencement of lawsuits against the Indemnified Parties on account of the Debtors' pre-petition obligations will inevitably give rise to indemnification claims against the Debtors' estates, divert the attention of key management personnel essential to the Debtors' reorganization, and undermine the Debtors' ability to successfully reorganize under Chapter 11 for the benefit of all creditors and parties in interest.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are 11 U.S.C. § 105(a) and applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas.

## III. BACKGROUND

**A.      The Debtors**

5.      On February 10, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

6.      The Debtors' Chapter 11 cases have been consolidated for procedural purposes and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

7.      The Debtors operate freestanding emergency room facilities across the Dallas-Fort Worth metroplex. The Debtors provide essential emergency medical services to patients through their network of facilities in the communities they serve.

**B.      The Indemnified Parties and Their Guaranty Obligations**

8.      The Indemnified Parties are current or former managers, officers, and equity holders of the Debtors who, in connection with the Debtors' operations, executed personal

guarantees or were otherwise made personally liable on account of various obligations of the

Debtors. The Indemnified Parties and their respective roles are as follows:

a)    **Ron Walraven** is the Manager and a one-third equity owner of ER of Texas, LLC. Mr. Walraven has executed personal guarantees on numerous obligations of the Debtors, including merchant cash advance agreements ("MCA Agreements"), equipment leases, credit facilities, and other financial obligations. Mr. Walraven's continued involvement in the day-to-day operations of the Debtors is essential to the Debtors' reorganization efforts.

b)    **Brad Woy** is an officer and/or employee of the Debtors who has executed personal guarantees on certain of the Debtors' obligations, including guarantees in connection with MCA agreements and other financing arrangements.

c)    **Phillip Michael Hawk, Jr.** is a one-third equity owner of ER of Texas, LLC who has executed personal guarantees on certain obligations of the Debtors.

d)    **Michele Brownfield** is a one-third equity owner and a prior Chief Operating Officer of ER of Texas, LLC who has executed personal guarantees on certain obligations of the Debtors. Ms. Brownfield's continued involvement in the Debtors' operations is critical to the reorganization, as she is the personnel manager.

e)    **Eric Mattingly** has executed personal guarantees on certain obligations of the Debtors in connection with financing transactions.

9.    In the aggregate, the Indemnified Parties face substantial personal liability arising

from their guarantees of the Debtors' pre-petition obligations. The creditors holding claims

against the Debtors also hold, in many instances, corresponding guaranty claims against one or

more of the Indemnified Parties. These guaranty claims are derivative of, and inextricably

intertwined with, the primary obligations owed by the Debtors.

**C. The Company Agreement Indemnification Provisions**

10.    The Company Agreements[2] of ER of Texas, LLC and its subsidiary entities

contain robust indemnification provisions that create contractual indemnification obligations

---

[2] The Company Agreements containing Article 8 indemnification provisions are: (1) ER of Texas, LLC – Operating Agreement dated July 1, 2020 (OPAG ER of Texas LLC.pdf); (2) ER of Texas Colleyville, LLC – Company Agreement dated July 19, 2021 (OPAG CL.pdf); (3) ER of Texas Hillcrest, LLC – Company Agreement dated July 19, 2021 (OPAG HL.pdf); (4) ER of Texas Highland Village, LLC – Amended and Restated Company Agreement dated October 3, 2020 (OPAG HV.pdf); (5) ER of Texas Hurst, LLC – Company Agreement dated July 19, 2021

running from the Debtors to the Indemnified Parties. Article 8 of the Company Agreement addresses indemnification, and the relevant provisions are set forth below.  Section 8.1 of the Company Agreement provides, in relevant part:

> *Section 8.1. Indemnification*. To the fullest extent permitted by law, the Company shall indemnify and hold harmless each Manager, officer, employee, and agent of the Company (each, an "Indemnified Party") from and against any and all losses, claims, damages, liabilities, expenses (including reasonable attorneys' fees and expenses), judgments, fines, settlements, and other amounts arising from any and all claims, demands, actions, suits, or proceedings, civil, criminal, administrative, or investigative, in which the Indemnified Party may be involved, or threatened to be involved, as a party or otherwise, by reason of the Indemnified Party's status as a Manager, officer, employee, or agent of the Company or by reason of anything done or not done by the Indemnified Party in any such capacity, regardless of whether the Indemnified Party continues to be a Manager, officer, employee, or agent at the time any such loss, claim, damage, liability, or expense is paid or incurred."

11.     Section 8.2 of the Company Agreement further provides that the Company shall pay the expenses (including reasonable attorneys' fees and expenses) incurred by an Indemnified Party in defending any proceeding in advance of the final disposition of such proceeding upon receipt by the Company of a written commitment by or on behalf of the Indemnified Party to repay such amount if it shall ultimately be determined that the Indemnified Party is not entitled to be indemnified by the Company as authorized under Article 8.

12.     These indemnification obligations create direct financial exposure for the Debtors' estates. If creditors are permitted to pursue the Indemnified Parties on account of their guarantees of the Debtors' pre-petition obligations, the Indemnified Parties will be entitled to

---

(OPAG HT.pdf); (6) ER of Texas Little Elm, LLC – Amended and Restated Company Agreement dated February 24, 2021 (OPAG LE.pdf); (7) ER of Texas Texoma, LLC – Company Agreement dated July 19, 2021 (OPAG TX.pdf); (8) ER of Texas Uptown, LLC – Company Agreement dated July 19, 2021 (Uptown OPAG.pdf); (9) ER of Texas Frisco, LLC – Amended and Restated Company Agreement dated April 7, 2022 (Frisco OPAG 4.7.22.pdf); (10) PERT, PLLC – Operating Agreement dated October 22, 2020 (Pert OPAG.pdf); and (11) MedOps Staffing, LLC – Ownership Agreement dated March 18, 2019 (OPAG Medops.pdf). The parent ER of Texas, LLC Operating Agreement, the PERT, PLLC Operating Agreement, and the MedOps Staffing, LLC Ownership Agreement contain liability and exculpation provisions but do not include the same comprehensive Article 8 indemnification language found in the subsidiary Company Agreements.

assert indemnification claims against the Debtors' estates under the Company Agreements. Such claims would constitute administrative expense claims entitled to priority payment under 11 U.S.C. §§ 503(b) and 507(a)(2), placing an enormous financial burden on the Debtors' estates and jeopardizing the Debtors' ability to reorganize.

13.     Even absent express contractual indemnification provisions, the Debtors would be obligated to indemnify the Indemnified Parties under common law and equitable principles. Texas courts have long recognized that a surety or guarantor who pays the debt of another is entitled to indemnification from the principal obligor. *See Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976). Additionally, equitable indemnification applies where a party, without fault, is compelled to pay a debt that in equity should be paid by another. Because the Indemnified Parties executed guarantees solely to enable the Debtors to obtain financing—not for their own benefit—the Debtors bear the ultimate responsibility for such obligations. Accordingly, even if a particular Debtor entity lacks a formal Company Agreement, the Indemnified Parties would retain indemnification rights under these alternative legal theories.

**D. Pending Litigation Against the Indemnified Parties**

14.     Since the Petition Date, numerous creditors have commenced or continued lawsuits and other proceedings against one or more of the Indemnified Parties on account of their guarantees of the Debtors' pre-petition obligations. The known pending actions include, without limitation, the following:

a)     *Merchant Capital v. ER of Texas, et al*. On or about November 5, 2025, Merchant Capital commenced an action in the Supreme Court for the State of New York, Rockland County, against ER of Texas, LLC and other Debtors as well as Indemnified Parties seeking to enforce obligations from Debtors' pre-petition MCA Agreements.

b)     *Core Funding Source LLC v. ER of Texas, LLC, et al*. On or about November 5, 2025, Core Funding Source LLC commenced an action in the Supreme Court for the State of New York, Kings County, against ER of Texas, LLC and other

Debtors as well as Indemnified Parties seeking to enforce obligations from Debtors' pre-petition MCA Agreements.

c)      ***MCA Funding Group v. ER of Texas, LLC, et al***. On or about December 5, 2025, MCA Funding Group commenced an action in the Supreme Court for the State of New York, Albany County, against ER of Texas, LLC and other Debtors as well as Indemnified Parties seeking to enforce obligations from Debtors' pre-petition MCA Agreements.

d)      ***Forever Funding v. Walraven***. On or about March 12, 2026 *(post-petition)*, Forever Funding commenced an action against Ron Walraven in the Supreme Court of the State of New York, New York County, seeking to enforce guaranty obligations arising from the Debtors' pre-petition MCA Agreements.

e)      ***EN OD Capital v. ER of Texas, et al.***. On or about February 17, 2026 *(post-petition),* EN OD Capital commenced an action in the Supreme Court of the State of New York, Kings County, seeking recovery of $490,220.01 arising from the Debtors' pre-petition obligations. This action was filed just one week after the Petition Date and names one or more of the Indemnified Parties as defendants on account of their guaranty obligations.

f)      ***Capybara Capital, LLC v. Walraven***. On or about March 18, 2026, Capybara Capital commenced an action in the Circuit Court in and for Palm Beach County, Florida, seeking to recover $548,408.63 and other relief from Ron Walraven, one of the Indemnified Parties, arising from Debtor ER of Texas Little Elm, LLC's pre-petition MCA Agreement with Capybara Capital. This action was filed after the Petition Date. Although ER of Texas Little Elm is identified as the primary counterparty to the MCA Agreement with Capybara Capital it is not named as a defendant in the action.

g)      ***Simmons Bank v. ER of Texas et al***. On or about March 5, 2025, Simmons Bank commenced an action in the District Court of Collin County, Texas seeking to recover on alleged pre-petition obligations of Debtor ER of Texas, LLC and certain Indemnified Parties as guarantors of Debtor's pre-petition obligations. Simmons Bank now seeks to sever the claims against Debtor from the claims against the Indemnified Parties in order to continue to pursue the claims against the Indemnified Parties for claims that relate exclusively to pre-petition obligations of Debtor ER of Texas, which sub-let business office space from Simmons Bank.

h)      **F&A Management, Imaging Solutions, and JC Graphic, Inc.**. Additional lawsuits have been filed or threatened by F&A Management, Imaging Solutions, and JC Graphic, Inc. against one or more of the Indemnified Parties on account of guarantees of the Debtors' pre-petition obligations. These actions further burden the Indemnified Parties and create additional indemnification exposure for the Debtors' estates.

i)      **Additional MCA Lawsuits Filed in New York and Florida**. In addition to the actions specifically identified above, the Debtors are aware of or suspect additional

lawsuits filed in the States of New York and Florida by various merchant cash advance lenders against one or more of the Indemnified Parties on account of personal guarantees of the Debtors' pre-petition MCA obligations. These actions are proliferating rapidly, and the Debtors anticipate that additional actions may be commenced absent the entry of the relief requested herein.

15. The foregoing actions are not an exhaustive list. The Debtors believe that additional creditors may have commenced or may imminently commence similar actions against the Indemnified Parties. The injunctive relief requested in this Motion is intended to address all such actions, whether currently pending or hereafter commenced.

16. Significantly, certain of the foregoing actions have already resulted in the entry of judgments against one or more of the Indemnified Parties. Some of these judgments were entered pre-petition, and additional judgments have been entered post-petition. The existence of these judgments further complicates the Debtors' obligations vis-à-vis both the creditors holding such judgments and the Indemnified Parties who are entitled to indemnification under the Company Agreements. The judgments create immediate and accruing financial exposure for the Indemnified Parties, who will in turn seek indemnification and advancement of expenses from the Debtors' estates. The interplay between these judgment obligations, the Debtors' indemnification duties, and the creditors' claims against the estates underscores the need for injunctive relief to prevent further fragmentation of the claims resolution process and to preserve estate assets for all creditors.

17. To the extent any judgments were entered against the Indemnified Parties after the Petition Date, such post-petition judgments may be subject to challenge as having been entered in violation of the automatic stay's protection of the Debtors' estates. Under the majority rule followed in most circuits, actions taken in violation of the automatic stay are void *ab initio*—that is, void from their inception and without legal effect. *See Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982); *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990).

The Fifth Circuit, however, has held that actions taken in violation of the automatic stay are voidable rather than void, meaning they remain valid unless and until a court declares them void. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989); *In re Coho Res., Inc.*, 345 F.3d 338, 342 (5th Cir. 2003). Under the voidable standard, the bankruptcy court retains discretionary authority to annul the stay retroactively under Section 362(d) or to declare such actions void. *See In re Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d 224, 228-29 (5th Cir. 1988). Here, any post-petition judgments entered against the Indemnified Parties would likely be set aside given that they were entered without notice to the Bankruptcy Court, without relief from stay, and without opportunity for the Debtors' bankruptcy counsel to intervene. To the extent the post-petition prosecution of actions against the Indemnified Parties constitutes an end-run around the stay's protection of the Debtors' estates, as Debtors believe is their express purpose, such actions may be enjoined under Section 105(a) and any resulting judgments may be subject to challenge. The entry of post-petition judgments against the Indemnified Parties on account of the Debtors' obligations only compounds the complexity of these cases and further supports the need for injunctive relief.

## IV. RELIEF REQUESTED

18.     By this Motion, the Debtors request entry of an order under 11 U.S.C. § 105(a):

a)     Temporarily enjoining all creditors from commencing or continuing any lawsuits, collection actions, or proceedings against any of the Indemnified Parties on account of guarantees or similar obligations arising from the Debtors' pre-petition obligations for a period of 60 days from entry of the order granting this Motion, subject to further extension by order of the Court upon motion by the Debtors; and

b)     Directing that any such actions currently pending against any of the Indemnified Parties be stayed for a period of 60 days from entry of the order granting this Motion, subject to further extension by order of the Court upon motion by the Debtors.

19. The requested *temporary* injunction is broad in scope and is intended to cover not only the specifically identified actions set forth herein, but any and all similar actions against the Indemnified Parties, whether currently pending or hereafter commenced, that arise from or relate to guarantees or similar obligations of the Debtors' pre-petition debts. The injunction shall remain in effect for a period of 60 days from entry of the order granting this Motion, subject to further extension by order of the Court upon motion by the Debtors. The relief is necessary to protect the Debtors' estates and to preserve the Debtors' ability to reorganize for the benefit of all creditors and parties in interest.

## V. BASIS FOR RELIEF

### A. Legal Standard Under Section 105(a)

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

20. Section 105(a) grants the bankruptcy court broad equitable powers to fashion relief necessary to effectuate the purposes of the Bankruptcy Code. The Fifth Circuit has recognized that while permanent injunctions insulating non-debtors from liability violate 11 U.S.C. § 524(e), temporary stays prohibiting creditors' suits against non-debtors during the bankruptcy case may be permissible under § 105(a) to facilitate reorganization. *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995). In *Zale*, the Fifth Circuit identified "unusual circumstances" warranting such temporary relief, including: (a) when the non-debtor and debtor enjoy such identity of interest that a suit against the non-debtor is essentially a suit

against the debtor, and (b) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. *Id*. at 761–62. Bankruptcy courts in this District have repeatedly applied *Zale* to grant temporary injunctions protecting non-debtor guarantors. *See In re Seatco, Inc*., 257 B.R. 469, 477 (Bankr. N.D. Tex. 2001) (Houser, J.) (applying Zale and granting temporary injunction); *In re Bernhard Steiner Pianos USA, Inc*., 292 B.R. 109, 117 (Bankr. N.D. Tex. 2002) (Hale, J.) (approving temporary injunction under Zale); *Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.*), 604 B.R. 484, 525 (N.D. Tex. 2019) (confirming that bankruptcy judges in this district have approved temporary injunctions under Zale on multiple occasions).

21.     The Supreme Court has confirmed the broad scope of the bankruptcy court's equitable powers under Section 105(a). In *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995), the Court recognized that the bankruptcy court's jurisdiction extends to proceedings that might be "related to" the bankruptcy estate, and that the court's equitable powers must be exercised to further the purposes of the Bankruptcy Code, including the efficient and expeditious facilitation of successful reorganizations.

22.     Under the *Zale* framework, the "unusual circumstances" warranting a temporary injunction under § 105(a) are present here. The claims against the Indemnified Parties arise from the same underlying obligations owed—and owed principally—by the Debtors, such that any suit against the Indemnified Parties is effectively a suit against the Debtors; the Debtors owe contractual indemnification obligations to the Indemnified Parties; and the continuation of such actions will have a direct and adverse impact on the Debtors' ability to accomplish reorganization. These are precisely the circumstances under which courts in this District have

granted temporary injunctive relief. *See In re Seatco, Inc.*, 257 B.R. at 475–76; *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. at 117.

**B.     The Injunction Is Necessary to Protect the Debtors' Estates**

   ***1.     Indemnification Obligations Create Administrative Claims***

   23.     As set forth above, the Company Agreements contain robust indemnification provisions that obligate the Debtors to indemnify and hold harmless the Indemnified Parties from and against any and all losses, claims, damages, liabilities, and expenses arising from their service as managers, officers, employees, and agents of the Debtors. If creditors are permitted to pursue the Indemnified Parties on account of their guarantees of the Debtors' pre-petition obligations, the Indemnified Parties will be compelled to assert indemnification claims against the Debtors' estates under these contractual provisions.

   24.     Such indemnification claims would constitute administrative expense claims entitled to priority payment under 11 U.S.C. §§ 503(b) and 507(a)(2). The assertion of massive administrative expense claims would drain the Debtors' estates of resources needed for operations and reorganization, potentially rendering these cases administratively insolvent. This result would be devastating to all creditors and parties in interest and would defeat the fundamental purpose of Chapter 11 reorganization.

   25.     Moreover, the indemnification obligations extend not only to judgments and settlements, but also to attorneys' fees and expenses incurred by the Indemnified Parties in defending against creditor actions. Each additional lawsuit filed against the Indemnified Parties generates additional defense costs that, under the Company Agreements, are ultimately borne by the Debtors' estates. Absent the injunctive relief requested herein, the Debtors' estates will be progressively depleted by the mounting costs of defending the Indemnified Parties across multiple jurisdictions.

### 2. The Claims Are Derivative of the Debtors' Obligations

26. The creditors' claims against the Indemnified Parties derive from and are inextricably intertwined with the underlying obligations owed by the Debtors. The guarantees executed by the Indemnified Parties are secondary obligations that exist solely because of the Debtors' primary obligations to the creditors. The creditors' pursuit of the Indemnified Parties on these guarantees constitutes an end-run around the bankruptcy process and the protections afforded to the Debtors under the Bankruptcy Code. This is all the more evident when such actions—tellingly—pursue only the individual guarantors and not the primary-obligor Debtors.

27. Permitting creditors to pursue the Indemnified Parties would allow those creditors to effectively collect on their claims against the Debtors outside the bankruptcy process, in derogation of the Bankruptcy Code's orderly claims resolution framework. Creditors who obtain judgments against the Indemnified Parties could potentially receive a double recovery—once through the guaranty action and again through the bankruptcy claims process—while other creditors would be prejudiced by the resulting drain on estate resources through indemnification claims.

28. Additionally, the continuation of multiple lawsuits against the Indemnified Parties across different jurisdictions creates a disorganized and fragmented procedure for resolving issues that are central to these bankruptcy cases. Courts have recognized that such fragmentation undermines the debtor's attempt at reorganization and justifies the entry of a Section 105(a) injunction. *See In re Johns-Manville Corp.*, 26 B.R. 420, 435–36 (Bankr. S.D.N.Y. 1983) (granting stay where continuation of scattered litigation would result in a "disorganized and fragmented procedure" for resolving major issues in the bankruptcy case that would undermine the [d]ebtor's attempt at reorganization).

29.     Furthermore, determinations made in the non-bankruptcy courts in favor of the creditors could have collateral estoppel or preclusive effects on issues that are central to the claims administration process in these bankruptcy cases. Courts have granted Section 105(a) injunctions where determinations in non-bankruptcy courts would unduly affect the bankruptcy claims process through application of collateral estoppel principles. *See In re Zale Corp.*, 62 F.3d at 762; *In re Johns-Manville Corp.*, 26 B.R. at 425–26 (finding that suits against officers and agents were derivative of identical claims against the debtor and exposed the estate to claims for contribution and indemnification as well as possible collateral estoppel effects).

### *3.     The Indemnified Parties Are Essential to the Reorganization*

30.     The Indemnified Parties, and particularly Ron Walraven as Manager of ER of Texas, LLC, are essential to the Debtors' ongoing operations and reorganization efforts. Mr. Walraven serves as the Manager of the parent Debtor entity and is actively involved in the day-to-day operations of the Debtors' freestanding emergency room facilities across the Dallas-Fort Worth metroplex. His continued focus on the Debtors' business operations is critical to the success of these Chapter 11 cases.

31.     Similarly, Brad Woy and Michele Brownfield play essential operational roles that are necessary for the Debtors to maintain their business operations during the pendency of these cases. The loss or distraction of any of these key personnel would severely impair the Debtors' ability to operate their emergency room facilities and pursue a successful reorganization.

32.     Defending multiple lawsuits across multiple jurisdictions—including in the State of New York and Florida, where several of the identified actions have been filed or threatened—will impose an enormous burden on the Indemnified Parties. The time, expense, and distraction associated with defending these actions will necessarily divert the attention of the Debtors' key management personnel from the critical task of reorganizing the Debtors' businesses. This

diversion of management attention constitutes direct and irreparable harm to the Debtors' estates and their ability to successfully reorganize.

33. In addition to the time spent defending litigation on the merits, the Indemnified Parties—and through them, the Debtors—may be subjected to extensive discovery proceedings across multiple jurisdictions. Discovery in guaranty actions typically requires the Indemnified Parties to produce financial records, respond to interrogatories, and submit to depositions regarding the underlying obligations, the Debtors' business operations, and the Indemnified Parties' own financial condition. Courts have recognized that such discovery proceedings cause a "massive drain on the time and energy of key personnel at a crucial hour of plan formulation." *In re Johns-Manville Corp.*, 26 B.R. at 425–26. The burden of responding to discovery in multiple cases, in multiple jurisdictions, at this critical juncture in the Debtors' reorganization, would be devastating to the Debtors' ability to focus on the tasks necessary to emerge from Chapter 11.

## C. The Traditional Injunction Factors Are Satisfied

34. The traditional factors for issuance of injunctive relief are satisfied here.

### 1. *Likelihood of Success on the Merits*

35. The Debtors have demonstrated a strong likelihood of success on the merits of this Motion. The Company Agreements contain express and broadly-worded indemnification provisions that unambiguously obligate the Debtors to indemnify the Indemnified Parties against the very types of claims and expenses at issue here. The indemnification provisions of Section 8.1 cover "any and all losses, claims, damages, liabilities, expenses (including reasonable attorneys' fees and expenses), judgments, fines, settlements, and other amounts" arising from the Indemnified Parties' service. The existence of these strong indemnification provisions establishes the necessary nexus between the claims against the Indemnified Parties and the Debtors' estates.

### 2.   *Irreparable Harm*

36.     Absent the requested injunctive relief, the Debtors' estates will suffer irreparable harm. The continued prosecution of actions against the Indemnified Parties will generate administrative expense claims that drain the estates of resources essential to reorganization. The distraction of key management personnel—particularly Ron Walraven, who serves as Manager of the parent Debtor entity—will impair the Debtors' ability to operate their emergency room facilities and pursue a viable plan of reorganization. These harms cannot be adequately remedied by monetary damages and are, by their nature, irreparable.

### 3.   *Balance of Hardships*

37.     The balance of hardships tips decidedly in favor of the Debtors. The creditors who hold guaranty claims against the Indemnified Parties also hold claims against the Debtors' estates. These creditors are not without recourse; they may assert their claims against the Debtors' estates in the bankruptcy process and receive distributions, if allowed, through a confirmed plan of reorganization. A temporary injunction **for a period of 60 days** merely directs creditors to pursue their claims through the orderly bankruptcy process rather than through piecemeal litigation against individual guarantors. By contrast, the harm to the Debtors' estates and the reorganization process from the continued prosecution of guaranty actions is severe and potentially fatal to these cases.

38.     Moreover, the Debtors' liquidation analysis indicates that the *allowed* claims of creditors should be paid in full under the proposed Plan of Reorganization. Because creditors stand to receive full payment of their *allowed* claims through the bankruptcy process, the prejudice to creditors from a temporary 60-day delay in pursuing guaranty actions against the Indemnified Parties is minimal. Creditors will not be deprived of an avenue for legitimate recovery; they will simply be required to pursue their claims through the orderly bankruptcy

process rather than through piecemeal litigation against individual guarantors. The temporary nature of the requested injunction, combined with the prospect of payment under the Plan, demonstrates that any inconvenience to creditors is vastly outweighed by the substantial harm to the Debtors' estates that would result from the continued prosecution of guaranty actions.

### 4.      Public Interest

39.      The public interest strongly favors the entry of the requested temporary injunction. The Debtors operate freestanding emergency room facilities that provide essential medical services to the communities they serve in the Dallas-Fort Worth metroplex. A successful reorganization will preserve these medical facilities, protect jobs, and ensure that patients continue to have access to emergency medical care. The public interest in facilitating the Debtors' reorganization and preserving these essential services outweighs any interest that individual creditors may have in a temporary 60-day delay in pursuing guaranty actions. *See Celotex Corp. v. Edwards*, 514 U.S. at 308 (recognizing the public interest in successful reorganizations).

### E.      Addressing Anticipated Arguments Against the Requested Relief

### 1.      Section 524(e) Does Not Bar the Requested Temporary Injunction

40.      Creditors may argue that 11 U.S.C. § 524(e), which provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt," prohibits this Court from enjoining actions against non-debtor guarantors. This argument fails. The Fifth Circuit squarely addressed this issue in *In re Zale Corp.*, 62 F.3d 746, and drew a critical distinction between permanent injunctions insulating non-debtors from liability—which do violate § 524(e)—and temporary stays prohibiting creditor suits against non-debtors during the pendency of the bankruptcy case, which do not. *Id*. at 761. The Debtors do not seek a permanent discharge of the Indemnified Parties' guaranty obligations.

Rather, the Debtors seek only a temporary 60-day stay of actions against the Indemnified Parties to preserve the status quo and protect the estates while the Debtors pursue reorganization. This is precisely the type of temporary relief that the Fifth Circuit approved in *Zale* and that courts in this District have repeatedly granted. *See In re Seatco, Inc.*, 257 B.R. at 475–76; *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. at 117.

> 2. **The Guaranty Obligations Are Not Truly "Independent" for Purposes of This Relief**

41. Creditors may contend that guaranty obligations are independent contractual undertakings and that the Indemnified Parties assumed the risk of personal liability when they executed their guarantees. While guarantees are technically separate contractual obligations, this argument misapprehends the nature of the relief sought and the standard under *Zale*. The Fifth Circuit's "unusual circumstances" test does not require that the non-debtor have no independent liability; it requires that there be such an identity of interest between the debtor and non-debtor that suit against the non-debtor is essentially a suit against the debtor, and that the third-party actions will adversely impact the debtor's reorganization. *In re Zale Corp.*, 62 F.3d at 761. Here, those conditions are met. The guaranty claims arise from the Debtors' underlying obligations. Every dollar recovered from the Indemnified Parties on their guarantees will give rise to a corresponding indemnification claim against the Debtors' estates under the Company Agreements. The Debtors are, in economic substance, the real parties in interest. *See In re Seatco, Inc.*, 257 B.R. at 475 (finding identity of interest where debtor owed indemnification obligations to non-debtor). Additionally, the guarantees were executed by the Indemnified Parties not for their own benefit, but in their capacities as managers, officers, and equity holders of the Debtors, to enable the Debtors to obtain necessary financing for their operations. The Indemnified Parties' guaranty exposure is a direct consequence of their service to the Debtors.

### 3. The Absence of a Co-Debtor Stay Under Chapter 11 Does Not Preclude § 105(a) Relief

42.    Creditors may argue that Congress's inclusion of a co-debtor stay provision in Chapter 13 (11 U.S.C. § 1301) and its omission of any comparable provision in Chapter 11 reflects a congressional intent to deny such relief in Chapter 11 cases. This argument also fails. Section 105(a) is an independent source of authority that is not limited by the specific provisions of § 1301. As the Fifth Circuit explained in *Zale*, the bankruptcy court's equitable powers under § 105(a) are sufficiently broad to grant temporary relief protecting non-debtors when "unusual circumstances" are present. *In re Zale Corp.*, 62 F.3d at 761. The absence of a statutory co-debtor stay in Chapter 11 does not strip the court of its equitable authority under § 105(a); rather, it means that such relief is discretionary rather than automatic. *See Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.*), 604 B.R. 484, 525 (N.D. Tex. 2019) (confirming that bankruptcy judges in this district have approved temporary injunctions under *Zale* on multiple occasions, notwithstanding the absence of a statutory co-debtor stay in Chapter 11). Courts in the Northern District of Texas have consistently recognized this distinction and have exercised their § 105(a) authority to grant temporary injunctions in Chapter 11 cases. *See In re Seatco, Inc.*, 257 B.R. at 475–76; *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. at 117.

### 4. "Unusual Circumstances" Are Present Here

43.    Creditors may argue that guaranty litigation is commonplace in bankruptcy and that the circumstances here do not rise to the level of "unusual circumstances" required under *Zale*. To the contrary, this case presents a confluence of factors that individually and collectively satisfy the *Zale* standard. First, the Debtors have express, broadly-worded contractual indemnification obligations to the Indemnified Parties under the Company Agreements, creating a direct nexus between the creditor actions and the Debtors' estates. Second, the sheer volume

and geographic breadth of the pending and threatened litigation is extraordinary—numerous lawsuits have been filed or are anticipated in multiple jurisdictions, including the State of New York, far from the Debtors' operations in Texas. Third, the Indemnified Parties are not mere passive investors; they are the Debtors' key operational personnel—Ron Walraven serves as the Manager of the parent Debtor entity, Michele Brownfield serves as Chief Operating Officer, and Brad Woy is an officer—whose diversion from the Debtors' operations to defend multi-jurisdictional litigation would cripple the Debtors' reorganization efforts. Fourth, the Debtors operate emergency medical facilities providing essential healthcare services, and the loss or distraction of key management threatens patient care and community health. These cumulative circumstances are far from routine and plainly satisfy the "unusual circumstances" threshold recognized in *Zale* and its progeny. *See In re Seatco, Inc.*, 257 B.R. at 475 (finding unusual circumstances based on indemnification obligations and adverse impact on reorganization).

     **5.**     ***The Indemnification Claims Are Properly Characterized as Administrative Expenses***

     44.     Creditors may challenge the Debtors' characterization of the indemnification claims as administrative expenses, arguing that the underlying guaranty obligations are pre-petition in nature and that any resulting indemnification claims would therefore be general unsecured claims. This argument conflates the timing of the underlying guaranty obligations with the timing of the indemnification obligations. While the guarantees themselves were executed pre-petition, the indemnification obligations at issue—specifically, the obligation to advance and pay defense costs, attorneys' fees, and related expenses incurred in defending post-petition litigation—are post-petition administrative obligations. Under Section 8.2 of the Company Agreements, the Debtors are obligated to pay the "expenses (including reasonable attorneys' fees and expenses) incurred by an Indemnified Party in defending any proceeding in

advance of the final disposition of such proceeding." To the extent the Indemnified Parties are forced to defend against creditor lawsuits during the pendency of these Chapter 11 cases, the costs of defense incurred post-petition are actual, necessary costs of preserving the estates and constitute administrative expenses under 11 U.S.C. § 503(b)(1)(A). Even if certain indemnification obligations are ultimately characterized as pre-petition general unsecured claims, the aggregate financial exposure to the estates remains significant and the diversion of management resources constitutes an independent basis for injunctive relief.

### 6. *Creditors' Right to Pursue Non-Debtor Parties Is Not Absolute*

45. Finally, creditors may argue that they have an absolute right to pursue non-debtor guarantors and that any injunction infringes upon their constitutional right of access to the courts. While creditors' rights to pursue non-debtors are significant, they are not absolute and must be balanced against the equitable considerations underlying the Bankruptcy Code. The temporary 60-day injunction sought herein does not extinguish creditors' claims against the Indemnified Parties; it merely imposes a brief, time-limited delay during which the Debtors can stabilize their operations and advance their reorganization. Creditors retain the full right to file proofs of claim in these cases, participate in the plan process, and—upon expiration of the injunction—resume their guaranty actions unless the Court orders otherwise. The minimal burden imposed on creditors by a 60-day stay pales in comparison to the devastating harm that the Debtors' estates would suffer if creditor lawsuits against the Indemnified Parties are permitted to proliferate unchecked.

### 7. *The Relief Is Properly Sought by Motion as a Contested Matter*

46. Creditors may argue that Federal Rule of Bankruptcy Procedure 7001(7), which provides that "a proceeding to obtain an injunction or other equitable relief" must be brought as

an adversary proceeding, requires this relief to be sought by adversary complaint rather than by motion. This argument should be rejected.

47.     Courts have widely recognized that Rule 7001(7) does not require an adversary proceeding for every form of injunctive relief in bankruptcy. The critical distinction most courts draw is between permanent injunctions—which generally require an adversary proceeding—and temporary or preliminary injunctive relief ancillary to the administration of the case, which may be sought by motion as a contested matter under Rule 9014. *See In re Caesars Entm't Operating Co.*, 561 B.R. 441, 445 (Bankr. N.D. Ill. 2016) (noting that "[c]ourts have found that adversary proceedings are not necessary when temporary relief is sought"); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 210–11 (3d Cir. 2010) (recognizing that contested matter procedure is appropriate for requests that are "ancillary" to the administration of the bankruptcy case). The relief sought here is a 60-day temporary injunction, not a permanent discharge of the Indemnified Parties' obligations. The Fifth Circuit in *Zale* itself drew the distinction between impermissible permanent non-debtor injunctions and permissible temporary stays, which reinforces that the temporary nature of the relief places it in a different procedural category. *In re Zale Corp.*, 62 F.3d at 761.

48.     Additionally, courts routinely treat motions to extend or impose the automatic stay—including extensions to non-debtor parties under § 105(a)—as contested matters rather than adversary proceedings. The relief sought here is functionally an extension of the stay protections already embedded in the Bankruptcy Code, not an independent injunction requiring plenary litigation. *See In re Monroe Well Serv., Inc.*, 80 B.R. 67, 71 (Bankr. E.D. Pa. 1987) (extending automatic stay to non-debtor by motion); *In re Johns-Manville Corp.*, 26 B.R. at 425–26 (granting temporary injunction on motion).

49.     Moreover, the Northern District of Texas cases cited in this Motion—*In re Seatco, Inc.*, 257 B.R. 469 (Bankr. N.D. Tex. 2001); *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109 (Bankr. N.D. Tex. 2002)—were handled on motion, not by adversary complaint. This is the established practice in this District for temporary § 105(a) injunctions protecting non-debtor guarantors. *See also Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.),* 604 B.R. 484, 525 (N.D. Tex. 2019) (confirming that bankruptcy judges in this district have approved temporary injunctions under *Zale* on multiple occasions).

50.     Finally, even if a court had concerns about procedural adequacy, Bankruptcy Rule 9014(c) provides an adequate backstop. Rule 9014(c) allows the court to direct that one or more of the Part VII (adversary proceeding) rules apply to a contested matter. This permits the Court to ensure adequate procedural protections—such as requiring responsive pleadings, discovery, or an evidentiary hearing—without converting the proceeding into a formal adversary case. The Debtors have already provided notice to all affected creditors and will participate in a hearing on this Motion. Should the Court wish to apply additional Part VII rules under Rule 9014(c), the Debtors can accommodate that request.

### *F.*     **Contemporaneous Indemnification Motion**

51.     Contemporaneously herewith, the Debtors have filed a separate motion (the "Indemnification Motion") seeking authority to honor their indemnification obligations to the Indemnified Parties under the Company Agreements, including the provision of retainers to counsel retained by the Indemnified Parties to defend against the pending and threatened creditor actions. The Indemnification Motion and this Motion are complementary: this Motion seeks to halt creditor actions against the Indemnified Parties, while the Indemnification Motion seeks authority for the Debtors to fulfill their contractual obligation to indemnify and defend the Indemnified Parties to the extent any such actions are not stayed. The Debtors respectfully

submit that both forms of relief are necessary and appropriate to protect the Debtors' estates and

facilitate the Debtors' reorganization.

## VI. CONCLUSION

52.     For the reasons set forth above, the Debtors respectfully request that this Court

enter an order granting the relief requested herein. A proposed form of order is attached hereto as

**Exhibit A**. This Motion is further supported by the Declaration of Ron Walraven attached hereto

as **Exhibit B**.

a)      Granting this Motion in its entirety;

b)      Temporarily enjoining all creditors from commencing or continuing any
lawsuits, collection actions, or other proceedings against any of the Indemnified Parties on
account of guarantees or similar obligations arising from the Debtors' pre-petition
obligations for a period of 60 days from entry of the order granting this Motion, subject to
further extension by order of the Court upon motion by the Debtors;

c)      Directing that any such actions currently pending against any of the
Indemnified Parties be stayed for a period of 60 days from entry of the order granting this
Motion, subject to further extension by order of the Court upon motion by the Debtors;

d)      Granting such other and further relief as the Court deems just and proper.

Dated: April 24, 2026                            Respectfully Submitted,

                                                 CM LAW, LLP


                                                 By: ___/s/ Richard Grant_____
                                                      Richard G. Grant
                                                      Tex. Bar No. 08302650

                                                 National Litigation Support Center
                                                 13101 Preston Road, Suite 110-1510
                                                 Dallas, Texas 75240
                                                 Telephone: 214-210-2929
                                                 Email: rgrant@cm.law

                                                 ATTORNEYS FOR
                                                 DEBTORS IN POSSESSION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has transmitted a true and correct copy of the foregoing (a) via the Court's Electronic Case Filing system to all persons participating therein on April 24, 2026; and (b) via United States First Class Mail, postage prepaid, on April 24, 2026 to each of the mailing addresses indicated on the service list attached hereto.


                                                 /s/ Richard Grant_____
                                                 Richard G. Grant

**EXHIBIT A**
**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ER OF TEXAS, LLC, ET AL.,[3] | § | Case No. 26-40606-11 |
| | § | Chapter 11 |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

**ORDER GRANTING DEBTORS' MOTION FOR INJUNCTIVE RELIEF
UNDER 11 U.S.C. § 105(A) TO ENJOIN CREDITORS FROM PURSUING
CLAIMS AGAINST THE DEBTORS' INDEMNIFIED PARTIES**

This matter coming before the Court on the Debtors' *Motion for Injunctive Relief Under*

*11 U.S.C. § 105(a) to Enjoin Creditors from Pursuing Claims Against the Debtors' Indemnified*

*Parties* (the "Motion"), filed by ER of Texas, LLC and its affiliated debtors and debtors in

---

[3] The debtors and debtors in possession are ER of Texas, LLC (EIN: 85-1751319); ER of Texas Colleyville, LLC (EIN: 87-1585575); ER of Texas Frisco, LLC (EIN: 85-1820777); ER of Texas Highland Village, LLC (EIN: 85-1794491); ER of Texas Hillcrest LLC (EIN: 87-1552062); ER of Texas Hurst, LLC (EIN: 87-1558323); ER of Texas Little Elm, LLC (EIN: 85-1778208); ER of Texas Texoma, LLC (EIN: 87-1558137); ER of Texas Uptown, LLC (EIN: 87-1651640); MedOPs Staffing, LLC (EIN: 83-4637945); and PERT, PLLC (EIN: 85-3330746). The mailing address of the debtors is 2800 Little Elm Parkway, Little Elm, Texas 75068.

possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases; and the Court

having considered the Motion and any responses thereto; and due and proper notice of the

Motion having been given to all parties entitled to such notice under the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, and no other or

further notice being necessary or required; and upon the record herein; and good cause appearing

therefor;

The Court hereby finds and determines that the term "Indemnified Parties" as used in this

Order shall mean and include Ronnie Frank Walraven, Jr., Brad Woy, Phillip Michael Hawk, Jr.,

Michele Brownfield, and Eric Mattingly, and their respective agents, employees, representatives,

successors, and assigns.

The Court further finds and determines that the term "Indemnified Obligations" as used

in this Order shall mean and include any and all (a) guarantees, personal guarantees, guaranty

agreements, surety agreements, indemnification obligations, or similar undertakings made by any

Indemnified Party in connection with or related to any debt, obligation, or liability of any of the

Debtors, and (b) claims against any Indemnified Party that are derivative of, arise from, or are

related to any claim that any creditor has or may have against any of the Debtors or their estates,

whether arising before, on, or after the date on which the Debtors filed their voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

The Court further finds that it has the authority to issue this Order pursuant to 11 U.S.C. §

105(a), which empowers the Court to issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of the Bankruptcy Code.  The Court's exercise of its

equitable powers under Section 105(a) is supported by established precedent in the United States

Court of Appeals for the Fifth Circuit and the bankruptcy courts of the Northern District of

Texas. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995) (recognizing that

while permanent non-debtor injunctions violate § 524(e), temporary stays may be permissible

under § 105(a) to facilitate reorganization where "unusual circumstances" exist); *In re Seatco,

Inc.*, 257 B.R. 469 (Bankr. N.D. Tex. 2001) (Houser, J.) (applying *Zale* and granting temporary

injunction protecting non-debtor guarantors); *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R.

109 (Bankr. N.D. Tex. 2002) (Hale, J.) (approving temporary injunction under *Zale*); *Neutra,

Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. 484 (N.D. Tex. 2019) (confirming that

bankruptcy judges in this district have approved temporary injunctions under *Zale* on multiple

occasions).  The Court finds that the Debtors have demonstrated "unusual circumstances"

warranting the entry of a temporary injunction, including: (a) an identity of interest between the

Debtors and the Indemnified Parties such that suits against the Indemnified Parties are

effectively suits against the Debtors by reason of the Debtors' contractual indemnification

obligations; and (b) the continuation of third-party actions against the Indemnified Parties will

have a direct and adverse impact on the Debtors' ability to accomplish reorganization.  The

Court further finds that the Debtors have demonstrated a likelihood of success on the merits, that

the Debtors' estates will suffer irreparable harm absent the requested relief, that the balance of

hardships tips in favor of the Debtors, and that the public interest favors the entry of a temporary

injunction.  The injunctive relief requested is necessary to preserve the Debtors' estates and to

facilitate the Debtors' reorganization.

The Court further finds that this matter is properly before the Court by motion as a

contested matter under Federal Rule of Bankruptcy Procedure 9014, rather than as an adversary

proceeding under Rule 7001(7). While Rule 7001(7) provides that a proceeding to obtain an

injunction generally must be brought as an adversary proceeding, courts have widely recognized

that this requirement does not apply to temporary or preliminary injunctive relief that is ancillary to the administration of the bankruptcy case. The relief sought here is a 60-day temporary injunction—not a permanent discharge of the Indemnified Parties' obligations—and is functionally an extension of the automatic stay protections already embedded in the Bankruptcy Code. Courts in the Northern District of Texas have consistently granted temporary § 105(a) injunctions protecting non-debtor guarantors on motion rather than by adversary complaint. *See In re Seatco, Inc.*, 257 B.R. 469 (Bankr. N.D. Tex. 2001); *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109 (Bankr. N.D. Tex. 2002). Moreover, Rule 9014(c) provides adequate procedural safeguards by permitting the Court to direct that any of the Part VII adversary proceeding rules apply to a contested matter as circumstances warrant. The notice provided to all affected creditors and the opportunity for a hearing satisfy due process requirements and ensure that any affected party may be heard before the Court enters relief.

## IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.      The Motion is GRANTED.

2.      ***Injunction***.  Pursuant to 11 U.S.C. § 105(a), all creditors of the Debtors, their agents, attorneys, servants, employees, representatives, successors, assigns, and all persons acting in concert or participation with them (collectively, "Enjoined Parties"), are hereby ENJOINED AND RESTRAINED from:

   a)      commencing, prosecuting, continuing, or otherwise pursuing any lawsuit, action, arbitration, or other proceeding against any of the Indemnified Parties;

   b)      enforcing, collecting, attaching, or executing upon any judgment, lien, or other remedy against any of the Indemnified Parties;

   c)      sending demand letters, collection notices, or other communications to any Indemnified Party demanding payment;

   d)      taking any action to garnish, levy upon, attach, or otherwise encumber any property or assets of any Indemnified Party;

e)      taking any other action against any Indemnified Party;

in each case on account of, arising from, or related to any Indemnified Obligations, whether such obligations arose before, on, or after the Petition Date.

3.      STAY OF PENDING ACTIONS.  The following specifically identified actions, and any other similar actions, are hereby STAYED pending further order of this Court:

a)      *Merchant Capital v. ER of Texas, et al.*, Supreme Court of the State of New York, Rockland County (filed November 5, 2025);

b)      *Core Funding Source LLC v. ER of Texas, LLC, et al.*, Supreme Court of the State of New York, Kings County (filed November 5, 2025);

c)      *MCA Funding Group v. ER of Texas, LLC, et al.*, Supreme Court of the State of New York, Albany County (filed December 5, 2025);

d)      *Forever Funding LLC v. Ronnie Frank Walraven Jr.*, Supreme Court of the State of New York, County of New York (filed March 12, 2026);

e)      *EN OD Capital v. ER of Texas LLC, et al.*, Supreme Court of the State of New York, Kings County, Index No. 505720/2026 (filed February 17, 2026);

f)      *Capybara Capital, LLC v. Walraven*, Circuit Court in and for Palm Beach County, Florida (filed March 18, 2026);

g)      Any and all actions, lawsuits, or proceedings brought by or on behalf of Qureshi and/or Simmons Bank against Brad Woy or any other Indemnified Party;

h)      Any and all actions, lawsuits, or proceedings brought by or on behalf of F&A Management, Imaging Solutions, JC Graphic, Inc., or any affiliate thereof against any Indemnified Party;

i)      Any and all other actions, lawsuits, arbitrations, or proceedings, whether currently pending or hereafter commenced, by any creditor of the Debtors against any Indemnified Party on account of any Indemnified Obligations.

4.      *Scope*.  The injunction set forth herein shall apply to ALL claims, actions, and proceedings against the Indemnified Parties arising from Indemnified Obligations, WHETHER OR NOT specifically identified in the Motion or this Order, and whether currently pending, threatened, or hereafter commenced in any court, tribunal, or forum, in any jurisdiction.

5. **Notice**. Any Enjoined Party that has commenced or is prosecuting an action against an Indemnified Party shall, within seven (7) days of service of this Order, file a notice of stay or voluntary dismissal without prejudice in such action and provide proof thereof to counsel for the Debtors.

6. **Duration**. This Order shall be effective for a period of sixty (60) days from the date of entry of this Order. The Debtors may seek further extension of this Order by motion filed with the Court prior to the expiration of such sixty (60) day period, and the Court may extend the effectiveness of this Order for additional periods upon a showing of good cause by the Debtors. Unless so extended, this Order shall expire at the end of such sixty (60) day period without further order of the Court.

7. **Preservation of Claims**. Nothing in this Order shall prejudice the rights of any creditor to file a proof of claim in these Chapter 11 cases, to participate in the plan process, or to seek modification or termination of this Order upon proper notice and hearing.

8. **Contempt**. Any violation of this Order may result in sanctions, including contempt of court.

9. **Retention of Jurisdiction**. This Court retains jurisdiction to enforce, modify, or interpret this Order.

10. Notwithstanding the foregoing, this Order shall be effective immediately upon entry and the Debtors need not comply with Bankruptcy Rule 7062.

### END OF ORDER ###

Submitted by:

Richard G. Grant
CM LAW, LLP
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

COUNSEL FOR DEBTORS IN POSSESSION

**EXHIBIT B**
**DECLARATION OF RON WALRAVEN**